UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Elizabeth Rask,

           Plaintiff,

vs.                                                                                          ORDER

Fresenius Medical Care
North America,

           Defendant.                          Civ. No. 05-1267 (ADM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Plaintiff to Compel Discovery, and to award Attorney's Fees.

A Hearing on the Motion was conducted on July 7, 2006, at which time, the Plaintiff appeared by Daniel E. Warner, Esq., and the Defendant appeared by Sandro M. Garofalo, Esq.

For reasons which follow, the Plaintiff's Motion is granted, in part.

## II.  Factual and Procedural Background

In this action, the Plaintiff Elizabeth Rask ("Rask") alleges that she was wrongfully and involuntarily terminated from employment with the Defendant, owing to her disability -- which, she contends, required multiple absences from work.  In her Complaint, she alleges that her termination, by the Defendant, violated the Family and Medical Leave Act ("FMLA"), Title 29 U.S.C. §2601 et. seq.; the Americans with Disabilities Act ("ADA"), Title 42 U.S.C. §12111 et. seq.; and the Minnesota Human Rights Act, Minnesota Statutes Section 363A.01, et. seq.  She alleges that the decision to terminate her employment was made by two (2) of her supervisors, to whom she had previously disclosed her medical conditions.

As a preliminary matter, the ultimate identity of her former employer remains in dispute.  The Plaintiff contends that she was employed by Fresenius Medical Care North America ("Fresenius"), while the Defendant contends that the Plaintiff was employed by Bio-Medical Applications, doing business as FMC Dialysis Services Duluth ("BMA").   Under Title 42 U.S.C. §1981a(b)(3), the Plaintiff's ultimate recovery, if any, may be limited by the size, and identity, of her former employer. Accordingly, both sides dispute the identity of the Plaintiff's former employer, and this dispute drives several of their discovery disputes.  Notably, the Defendant has

answered as BMA, and contends that the caption of the case is incorrect, although it has not sought any formal remedy for that asserted error.

The Plaintiff served her first set of discovery requests on October 27, 2005. A second set was served on April 26, 2006, and was answered on May 30, 2006. The Plaintiff contends that the Defendant's responses, to this point, are insufficient. The first set's production was delayed by defense counsel's involvement in other matters, and the Defendant contends it has fully responded to the Plaintiff's Second Set of Requests.

Given the number of disputed Interrogatories and Requests for Documents, the disputed discovery requests will not be repeated here, but will be summarized in our related discussion. We further note that the Plaintiff has previously advised that no further discovery is necessary, other than that which is encompassed by this Motion. Order, Docket No. 26, at p. 2.

### III.  Discussion

The relevancy of discovery material is governed by Rule 26(b)(1), Federal Rules of Civil Procedure, which allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party," and "[f]or good cause, the court may order discovery of any matter relevant to the subject

matter involved in the action." The Rule further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." While such a standard represents the liberality in which discovery requests must be treated, relevancy under Rule 26 is not without bounds. Archer Daniel Midlands Co. v. Aon Risk Services Inc. of Minnesota, 187 F.R.D. 578, 589 (D. Minn. 1999). As our Court of Appeals has observed:

> [T]his often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer v. Mack Trucks, 981 F.2d 377, 380 (8th Cir. 1992).

Therefore, notwithstanding the liberality of discovery, "we will remain reluctant to allow any party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" Archer Daniel Midlands Co. v. Aon Risk Services, Inc. of Minnesota, supra at 589, quoting Onwuka v. Federal Express Corp., 178 F.R.D. 508, 516 (D. Minn. 1997); Carlson Cos., Inc. v. Sperry & Hutchinson Co., 374 F. Supp. 1080,1080 (D. Minn. 1974).

With the preceding as our guide, we begin by noting that the Defendant contends the Plaintiff has "misused the discovery process in this litigation to pursue an aimless, burdensome, and costly fishing expedition," that is not tailored to uncover relevant evidence. Docket No. 28, at p. 1. The Defendant argues that the Plaintiff has provided 23 Interrogatories, with multiple discrete subparts, which exceed the allowable number permitted by our Pretrial Order. However, from our review of the pertinent Interrogatories, the number of Interrogatories appears compliant with our Order, and accordingly, we do not deny the Plaintiff's Motion to Compel on that basis.

A.   Discovery Concerning the Identity of the Plaintiff's Former Employer.

The Plaintiff represents that the first set of requested documents address the relationship between the Plaintiff and the Defendant. The Plaintiff contends that the only document, which the Plaintiff has produced, is a W-2 that has BMA listed as the employer. However, for our purposes, we need not decide whether Fresenius or BMA is the actual former employer of the Plaintiff, as only the Plaintiff's Motion to Compel is currently before us.

The first set of discovery requests at issue -- namely, Requests for Documents Nos. 5, 55, and 56, as well as Interrogatories Nos. 10 and 12 -- address the relationship between BMA and Fresenius. The Plaintiff notes that the Defendant has placed the identity of the Plaintiff's former employer at issue, and therefore, the Plaintiff seeks organizational charts (Request No. 5), documentation supporting the Defendant's contention that BMA is the Plaintiff's employer (Request No. 55), and a list of the Board of Directors, and Officers, for both BMA and Fresenius (Request No. 56). The Plaintiffs also have requested responses to Interrogatories seeking the number of employees employed by both entities.

BMA has responded by providing a staff list for the Duluth Clinic, where the Plaintiff worked, and has provided a document supplying the organizational structure of BMA vis-a-vis other related entities. At the Hearing, the Plaintiff provided the Court, as well as the Defendant, with an Affidavit, which documented the Defendant's production of an organizational chart that diagramed the corporate relationship of Fresenius to BMA.

We conclude that the Defendant must supplement the documents produced to date, as well as its responses to the Interrogatories, which relate to the relationship between BMA and Fresenius. Our Court of Appeals has found that separate entities

can be consolidated into "one employer" for purposes of a Title VII claim, and has analyzed the following factors : "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." Artis v. Francis Howell North Band Booster Ass'n, Inc., 161 F.3d 1178, 1184 (8th Cir. 1998), citing Baker v. Stuart Broadcasting Co., 560 F.2d 389, 391 (8th Cir. 1977).

Other Courts have applied those same factors in determining whether separate corporate entities should be considered as "one employer" for purposes of FMLA and ADA claims. See, e.g., Schubert v. Bethesda Health Group, Inc. 319 F. Supp.2d 963, 966 (E.D. Mo. 2004)(FMLA claim); Case v. Platte County, 2004 WL 1774117, at *2 (D. Neb., July 21, 2004)(ADA claim); Greenway v. Buffalo Hilton Hotel, 951 F.Supp. 1039, 1055-56 (W.D.N.Y.,1997)(employing the same factors in consolidating separate entities for purposes of setting damage limits in an ADA claim); Boley v. Commercial Carriers, Inc., 1996 WL 118280 at *7 (E.D. Mo., February 23, 1996) (applying the factors and noting that "this Court will look to Title VII cases to determine whether [a corporate entity] is plaintiff's "employer" for purposes of the ADA and the Missouri Human Rights Act").

From the Defendant's minimal response to the Plaintiff's discovery requests on this topic, the Plaintiff is clearly unable to ascertain whether any of the factors have been satisfied. Accordingly, we grant the Plaintiff's Motion to Compel as to those requests, except as to Request No. 55, which we find overly broad, given that "all policies, contractual relationships, licensing agreements, and franchise agreements," covers an entire universe of documents which are plainly irrelevant to the current action. However, at the Hearing, the Plaintiff restricted her discovery request to only those documents which establish a relationship between FMA and Fresenius. Accordingly, we grant this Motion except as to Request No. 55.

B.     Studies of Costs of Absenteeism.

Request No. 33, Set I, requests the production of any studies, which have been performed by the Defendant, with respect to absenteeism, the costs incurred by actions associated with the FMLA, and the cost of health insurance. As noted by the Defendant, the relevancy of any such studies is unclear, because there has been no assertion that any studies, if they exist, impacted upon the decision to terminate the Plaintiff's employment. Moreover, the Defendant represented, at the Hearing, that no such studies were conducted prior to the Plaintiff's termination, and noted that the Plaintiff has testified that she did not request a leave of absence under the FMLA, or

utilize health insurance offered through either BMA or Fresenius. Accordingly, any studies on those issues are irrelevant to the Plaintiff's claims. Therefore, we deny the Motion to Compel as to this Request.

C.     <u>Request for Documents Relating to the Defendant's Former Employees</u>.

The Plaintiff seeks multiple categories of discovery in order to demonstrate disparate treatment, between her and her co-workers, as well as discovery as to evidence supporting, or contesting, the accuracy of the Defendant's reasons for her termination. Notably, the Plaintiff has not alleged, in her Complaint, that others who were similarly situated with a disability, were terminated, or that she received dissimilar treatment. However, we conclude, given the nature of her claim, that those areas are open for some level of factual development during discovery. Accordingly, several of the Plaintiff's requests seek information, including disciplinary, remedial, and termination decisions, regarding her former co-workers.

The first dispute centers upon Interrogatory No. 5, which requests the last known home phone number, and address, of former employees at the Plaintiff's place of employment for the period extending from six months preceding the Plaintiff's termination, to the present date. The Defendant represents that it has responded by

providing all names of those former employees, and whether the nature of their departure was voluntary. Absent some showing that the addresses and phone numbers have some protected privacy interest, which we surmise are likely published in the phone book, we find no rationale which would prohibit the Defendant from producing the last known phone number, and address, of those former employees, and accordingly, we grant this aspect of the Plaintiff's Motion. Should the production of that information appear to infringe upon some protected privacy interest, we direct the parties, in the first instance, to meet and confer so as to draft a Protective Order, which addresses those concerns.

The Plaintiff also seeks the production of the attendance records of all employees for the last two years. <u>Request No. 41</u>. The Defendant represents that no such document is readily available, see <u>Affidavit of Christine Mitchell</u>, <u>Docket No. 37</u>, at ¶2, and that it would be unduly burdensome to generate such records. We are unable to perceive how the attendance records of all of the Plaintiff's former co-workers, with all of the myriad reasons an employee might miss a day of work, are relevant to whether the Plaintiff's termination violated the ADA, the FMLA, or the Minnesota Human Rights Act, and we are aware of no requirement that a party much generate personnel records, which are not routinely maintained in the ordinary course

of its business, simply to respond to an opposing party's discovery. Accordingly, this aspect of the Plaintiff's Motion is denied.

The Plaintiff also seeks disciplinary forms, and termination approval forms, from all of the Defendant's Wisconsin, and Minnesota Clinics, for a five (5) year period of time. The Defendant contends that this request is also overbroad and burdensome, given that it has provided the names and all supporting documentation for those employees who have been terminated by BMA for excessive absenteeism/tardiness. Nevertheless, we find that this request could lead to relevant evidence, but we are hesitant to open up the entirety of the personnel files of non-parties for discovery. As a preliminary matter, the Plaintiff has represented that her period of employment with the Defendant began on April 13, 1998. Accordingly, the requested documents that predate her period of employment are irrelevant to the current action, and the Defendant is relieved of producing those documents. We further restrict the temporal scope of the request to the three (3) years preceding the Plaintiff's termination, in order to relieve some of the overly burdensomeness which attends the requested discovery, as well as to focus the parties' discovery efforts on the applicable period of time which lead to the Plaintiff's termination of employment.

We have also previously recognized that "[w]e think the proper balance, between the privacy interests of non-party third persons, and the discovery interests of a party litigant, is to assure that only those portions of the pertinent personnel files, which are clearly relevant to the parties' claims, are open to disclosure and, then, subject to an appropriate Confidentiality Order as the circumstances require." Onwuka v. Federal Express, supra at 517. We note that the Defendant has represented that the ultimate decisions to terminate, or discipline, were made at the behest of the Defendant's Area Supervisor, as well as a direct supervisor at the Plaintiff's site of employment. Accordingly, we find that the termination and disciplinary documents of sites under their direction are relevant to the Plaintiff's claims, and should be provided. We conclude, therefore, that the disciplinary forms, involuntary termination forms, and Corrective Action forms requested by the Plaintiff in Request No. 8, Set II, for the three (3) year period preceding the Plaintiff's termination, whose involuntary terminations were premised on the same reasons proffered by the Defendant, and were at the behest of the Plaintiff's direct and area supervisors, be produced. We further direct the parties to "meet and confer" to discuss any inherent

privacy concerns of those third-parties, and to responsibly draft a Protective Order covering those documents, should one become necessary.[1]

The Plaintiff's Request No. 9, Set II, requests all leave of absence documentation completed by any former employees at any of the six BMA clinics in Minnesota and Wisconsin. Again, the Defendant contends that it has provided all responsive leave of absence forms completed by current employees, during the pertinent time frame, and that the Plaintiff testified, at her deposition, that she did not request any leaves of absence during her employment with BMA. As the Plaintiff testified that she had not completed the referenced forms, the relevance of the requested documents, several of which are filled out at facilities where she did not work, is unsubstantiated. Accordingly, we deny this aspect of the Plaintiff's Motion as overly broad and unlikely to lead to admissible evidence.

---

[1]We suggest that if the responsive documents contain sensitive medical information, or inherently personal information, that the Defendant redact the names and identifying information from those documents, and provide generic labels to correlate to the redactions.

D.     Answers to Interrogatories that the Plaintiff Contends are Insufficient.

The Plaintiff and Defendant disagree as to whether Interrogatory Nos. 1-3, and 18-19, were sufficiently answered.

Interrogatory No. 1 seeks the Defendant's rationale for the Plaintiff's termination. The Defendant has responded by saying that the termination resulted after numerous warnings, and other corrective action, which arose from misconduct, insubordination, and absenteeism, in violation of Company policies. Interrogatory Nos. 2 and 3 request the names of the persons who participated in the decision leading to the Plaintiff's termination, or who have knowledge of the denials or defenses. The Defendant responded by providing various names, and making those persons available for depositions, as well as by providing their reasons for the Plaintiff's termination. Since the Defendant has adequately responded to these Interrogatories, and have produced deponents on the subject matter, we deny this aspect of the Plaintiff's Motion.

Interrogatory Nos. 18 and 19 seek the dates of the Plaintiff's absences, as well as whether the Defendant considered the absence to be considered as related to a "serious health condition." The Defendant responded by providing the dates of

absences, but would not speculate as to whether those absences were caused by a serious health condition, as the Plaintiff's requests were not made pursuant to the FMLA. At the Hearing, the Plaintiff advised that she was withdrawing this aspect of her Motion to Compel, and therefore, we do not consider that aspect further.

E.    Contention Interrogatories.

Interrogatories Nos. 13-14, and 17-18, are Interrogatories which seek to establish why the Defendant does not consider the Plaintiff disabled or unqualified for her former position. The Defendant responded that those Interrogatories impermissibly seek to shift the burden of proof upon the Defendant. However, the information which underlies the Defendant's conclusion, that the Plaintiff is "not disabled" or was unqualified for her position, is relevant to its claims and defenses in this action. Moreover, the Defendant appears to misconstrue the nature of discovery and, specifically, the thrust of the Interrogatories at issue. As our Court of Appeals has explained, "[t]he purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993), quoting Greyhound Lines, Inc. v. Miller, 402 F.2d 134, 143 (8th Cir. 1968). Notably, Interrogatory Nos. 13-14, 17, and 18, appear to be in the nature of contention Interrogatories, which facilitate the discovery

process by "narrow[ing] and defin[ing] issues for Trial beyond what may be ascertained from the parties' pleadings." See, Transclean v. Bridgewood Services, Inc., 77 F. Supp.2d 1045, 1062 (D. Minn. 1999).

The Defendant's responses do very little to narrow or define the issues for Trial. Accordingly, the Defendant's responses are inadequate to satisfy its discovery obligations under Rule 33. Furthermore, discovery is near its conclusion, and supplementation of the facts and legal theories could narrow the number of issues prior to Trial. Accordingly, we grant the Plaintiff's Motion to Compel as to these contention Interrogatories.

F.  The Plaintiff's Request for Documents Constituting Evidence of Communications Between Christine Mitchell and Elizabeth Sahatjian

The Plaintiffs seek, in Request No. 4, Set II, all documents which memorialize the discussion between Christine Mitchell ("Mitchell"), a manager who participated in the decision to terminate the Plaintiff, with in-house counsel Elizabeth Sahatjian. The Defendant contends that those documents are protected by the attorney-client privilege, as well as the work product doctrine. The Plaintiff maintains that those privileges are inapplicable, and should not be used as both a shield and a sword.

From the filings, the disputed communications fall squarely within the confines of the attorney-client privilege. The Defendant advises that, "prior to carrying out her decision to terminate Rask, Mitchell sought the advice of corporate counsel" for the purposes of seeking a legal opinion. Mitchell Aff., Docket No. 31, at ¶2. The Plaintiff states that the Defendant, by asserting an advice-of-counsel defense, waives the privilege. However, the Defendant has not asserted such a defense in this action. Furthermore, this is not a case where counsel was merely present at a meeting, in an attempt to invoke the privilege. Instead, on this Record, the circumstances present a scenario in which the attorney-client privilege properly attaches – a corporate employee seeks legal advice as to a corporate decision from in-house counsel. Accordingly, we deny the Plaintiff's Motion to Compel any response to Request No. 4, Set II.

G.   Miscellaneous Discovery Requests.

The Plaintiff requests all of the photographs that the Defendant has of the Plaintiff. The Defendant represents it has supplied the copy of the driver's license photo it has, which is the entirety of the photographs in the Defendant's possession. How photographs of the Plaintiff is relevant, under the circumstances here, is unclear

but, in view of the Defendant's representation that it has supplied all of the photos of the Plaintiff in its possession, we deny this Motion to Compel.

The Defendant also objects to Interrogatory No. 23, which asks for a detailed explanation of all electronic searches that the Defendant has undertaken. The Defendant represents that it will provide some level of detail, but a comprehensive, sweeping request for electronic documents, is overbroad, in the absence of a claim of spoliation of evidence. At the Hearing, the Plaintiff provided the Court, as well as the Defendant, an Affidavit, which contained information on the level of electronic searching performed by the Defendant.[2] See, <u>Second Affidavit of Daniel E. Warner.</u> The Defendant represented that it searched for the terms "Elizabeth," "Beth," and "Rask," in the e-mail accounts of the Plaintiff's former supervisors. Given that the Plaintiff has represented that two (2) additional parties – namely, a vice president, and a member of the Defendant's in-house legal staff, participated in the decision-making process, we find that, even in the absence of any demonstration of spoliation, a search should be conducted of those two (2) person's computers as well. Whether any

---

[2] Given the untimely nature of the Affidavit, we offered the Defendant an opportunity to respond to the Plaintiff's submission at a later time, which offer was accepted. <u>Docket No. 34</u>.

information contained on those computers, if any, is discoverable, or is privileged, we leave to counsel in the first instance. Accordingly, we grant the Plaintiff's Motion for the Defendant to supplement its responses to Interrogatory No. 23, consistent with the guidance from this Order.

H.     Attorney's Fees.

Counsel for both parties have made a good faith effort to resolve what could be resolved without resort to Court intervention, and we further find that the remaining disputes, which we have not resolved, were the product of a reasonable interpretation, and application of the governing law. An award of fees, under such circumstances, would be improper, and therefore, we deny the Plaintiff's request for fees and costs.

NOW, THEREFORE, It is --

ORDERED:

That the Motion of the Plaintiff to Compel Discovery and to award Attorneys Fees [Docket No. 14] is GRANTED, in part, as more fully explained in the text of this Order.

BY THE COURT:

Dated: July 25, 2006

*s/Raymond L. Erickson*
Raymond L. Erickson
CHIEF U.S. MAGISTRATE JUDGE